No. 23-5053

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

AMERICAN COLLEGE OF PEDIATRICIANS, on behalf of its members; and CATHOLIC MEDICAL ASSOCIATION, on behalf of its members,

*Plaintiffs-Appellants,*

v.

XAVIER BECERRA, in his official capacity as Secretary of the United States Department of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; OFFICE FOR CIVIL RIGHTS OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; and LISA J. PINO, in her official capacity as Director of the Office for Civil Rights of the U.S. Department of Health and Human Services,

*Defendants-Appellees.*

On Appeal from the United States District Court
For the Eastern District of Tennessee (Chattanooga)
Case No. 1:21-cv-00195

**BRIEF OF THE LIBERTY JUSTICE CENTER AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS**

Daniel Suhr
Liberty Justice Center
440 N. Wells St., Ste. 200
Chicago IL 60654
dsuhr@libertyjusticecenter.org
(312) 637-2280
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF THE AMICUS CURIAE ................................................... 1

ARGUMENT ............................................................................................. 1

    The Appellants have standing to challenge the Mandate because the Mandate creates an imminent harm to the Appellants. ................. 1

CONCLUSION ......................................................................................... 6

CERTIFICATE OF COMPLIANCE ........................................................ 7

CERTIFICATE OF SERVICE ................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. Alvarez,*
  679 F.3d 583 (7th Cir. 2012)......................................................................3, 6

*Babbitt v. Farm Workers,*
  442 U.S. 289 (1979)........................................................................................2

*Bauer v. Shepard,*
  620 F.3d 704 (7th Cir. 2010).........................................................................5

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013)........................................................................................2

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)........................................................................................2

*Majors v. Abell,*
  317 F.3d 719 (7th Cir, 2003).........................................................................5

*Picard v. Magliano,*
  42 F.4th 89 (2d Cir. 2022) ............................................................................3

*Steffel v. Thompson,*
  415 U.S. 452 (1974)........................................................................................3

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014)........................................................................................2

*United States v. Szabo,*
  760 F.3d 997 (9th Cir. 2014).........................................................................3

*Warth v. Seldin,*
  422 U.S. 490 (1975)........................................................................................1

**Other Authorities**

Executive Order 13,988...................................................................................4

**Regulations**

86 Fed. Reg. 27984 .........................................................................................4

## INTEREST OF THE AMICUS CURIAE[1]

The Liberty Justice Center is a nonprofit, nonpartisan public-interest litigation firm that seeks to protect economic liberty, private property rights, free speech, and other fundamental rights. The Liberty Justice Center pursues its goals through strategic, precedent-setting litigation to revitalize constitutional restraints on government power and protections for individual rights.

The Liberty Justice Center frequently brings pre-enforcement challenges to newly enacted laws, rules, and policies to prevent harm to their clients from unconstitutional laws.

## ARGUMENT

**The Appellants have standing to challenge the Mandate because the Mandate creates an imminent harm to the Appellants.**

The purpose of the injury-in-fact requirement is to ensure that the plaintiff has a "personal stake in the outcome of the controversy." *Warth v. Seldin,* 422 U.S. 490, 498 (1975) (quote and citation omitted). The injury must be "concrete and particularized" and "actual or imminent,

---

[1] Rule 29 statement: No counsel for any party authored any part of this brief, and no person or entity other than Amicus funded its preparation or submission. Counsel for all parties consented to the filing of this brief.

not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (quotes and citations omitted). If the threatened injury is "certainly impending," or there is a "substantial risk that harm will occur," then the requirement is satisfied. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 414 n.5 (2013).

The Supreme Court has held that "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979)). So for example, a plaintiff has standing to challenge a statute criminalizing the use of "deceptive publicity" to encourage a boycott on the grounds that it "unconstitutionally penalize[d] inaccuracies." *Babbitt,* 442 U.S. at 301. The plaintiffs in *Babbitt* had "actively engaged in consumer publicity campaigns in the past" and "alleged in their complaint an intention to continue" those campaigns in the future. *Id.* They argued that "to avoid criminal prosecution they must curtail their consumer appeals, and thus forgo full exercise of . . . their First Amendment rights." *Id.*

Other circuit courts have also found pre-enforcement suit proper in a wide variety of cases. *See ACLU v. Alvarez,* 679 F.3d 583 (7th Cir. 2012) (eavesdropping statute); *Picard v. Magliano,* 42 F.4th 89 (2d Cir. 2022) (prohibition against jury nullification); *United States v. Szabo,* 760 F.3d 997 (9th Cir. 2014) (regulation prohibiting disturbances at VA facilities).

This case is no different. The HHS Notification[2] and Executive Order 13,988 (collectively, "the Mandate") require the Appellants to betray their core principles with respect to medical care, and compel them to make what they believe is false speech, in referring to the gender identity of their patients. As in *Babbitt,* ACPeds and CMA have engaged in the prohibited activity in the past and seeks to continue to do so. They should not need to "first expose [it]self to actual arrest or prosecution to be entitled to challenge" the Directive. *Steffel v. Thompson,* 415 U.S. 452, 459 (1974).

Nevertheless, the District Court erroneously held that ACPeds and CMA do not "face a credible threat of prosecution." R. 61 at 33, PageID # 1221.

---

[2] "Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972," 86 Fed. Reg. 27984

3

The plain text of the HHS Notification disproves the District Court's position. The Notification states that HHS "*will* interpret and enforce section 1557 of the Affordable Care Act prohibition on discrimination on the basis of sex to include . . . discrimination on the basis of gender identity." 86 Fed. Reg. 27984 (emphasis added). It does not say that HHS "might" enforce section 1557 against those that discriminate on the basis of gender identity; it says HHS *"will."* In short, to find that Appellants will suffer a "certainly impending" injury, all this Court need do is take the Respondents at their word.

The legal basis of the Notification, such as it is, is Executive Order 13,988, which states that it is official presidential policy "to prevent and combat discrimination on the basis of gender identity . . . and to fully enforce Title VII and other laws that prohibit discrimination on the basis of gender identity." The President has made it clear where he stands on the issue, telling transgender Americans "I have your back,"[3] "your President has your back. During Pride Month – and all the time,"[4] "Transgender rights are human rights,"[5] and "My Administration

---

[3] https://twitter.com/POTUS/status/1509532210495254528
[4] https://twitter.com/POTUS/status/1402045647847673856
[5] https://twitter.com/POTUS/status/1377255646651908102

4

remains deeply committed to strengthening the rights of LGBTQI+ Americans, including transgender Americans."[6] Likewise, Secretary Becerra has stated that he will "use every tool at our disposal to keep our [transgender] kids and doctors safe,"[7] "Thank you to all the organizations and individuals who fight to make necessary. . . gender-affirming care accessible,"[8] "HHS will do everything in our power to protect transgender people's right to health care, including gender-affirming care,"[9] and "@POTUS & I are committed to showing up in meaningful ways"[10] to support the transgender community. This language does not convey an intent to leave Appellants alone. Or to put it another way, the Notification "implies a threat to prosecute, so pre-enforcement challenges are proper." *Bauer v. Shepard,* 620 F.3d 704, 708 (7th Cir. 2010); *see also Majors v. Abell,* 317 F.3d 719, 721 (7th Cir, 2003) ("the threat is latent in the existence of the statute").

It is also worth noting in this context that cancel culture is fueling an army of activists looking to manufacture complaints against those on the

---

[6] https://twitter.com/POTUS/status/1594461900594905090
[7] https://twitter.com/SecBecerra/status/1512198627560767489
[8] https://twitter.com/SecBecerra/status/1504540687685017602
[9] https://twitter.com/SecBecerra/status/1641832761559318529
[10] https://twitter.com/SecBecerra/status/1641788735518801920

"wrong" side of culture war issues, and that this Administration is looking for "wins" to demonstrate its enthusiasm on this issue to its political base. All of this should give the Court "compelling evidence, or an overwhelming gut feeling, that the [Mandate] has intolerable consequences." *ACLU,* 679 F.3d at 609 (Posner, J., dissenting).

## CONCLUSION

For the foregoing reasons, the decision of the District Court should be reversed.

Respectfully submitted,

/s/ Daniel Suhr
Daniel Suhr
Liberty Justice Center
440 N. Wells St., Ste. 200
Chicago IL 60654
dsuhr@libertyjusticecenter.org
(312) 637-2280
*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 1,034 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word using a proportionally spaced typeface, 14-point Century Schoolbook.

/s/ Daniel Suhr

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s/ Daniel Suhr