No. 23-5053

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

AMERICAN COLLEGE OF PEDIATRICIANS, on behalf of its members; CATHOLIC MEDICAL ASSOCIATION, on behalf of its members,

*Plaintiffs-Appellants,*

v.

XAVIER BECERRA, in his official capacity as Secretary of the United States Department of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; OFFICE FOR CIVIL RIGHTS OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; LISA J. PINO, in her official capacity as Director of the Office for Civil Rights of the U.S. Department of Health and Human Services,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Tennessee (Chattanooga)
Case No. 1:21-cv-00195

## SUPPLEMENTAL BRIEF OF APPELLANTS

| | |
|---|---|
| John J. Bursch | Christopher P. Schandevel |
| Matthew S. Bowman | Julie Marie Blake |
| ALLIANCE DEFENDING FREEDOM | ALLIANCE DEFENDING FREEDOM |
| 440 First Street NW, Suite 600 | 44180 Riverside Pkwy |
| Washington, DC 20001 | Lansdowne, VA 20176 |
| (202) 393-8690 | (571) 707-4655 |
| jbursch@ADFlegal.org | cschandevel@ADFlegal.org |
| mbowman@ADFlegal.org | jblake@ADFlegal.org |

*Counsel for Appellants*

## TABLE OF CONTENTS

Table of Authorities ............................................................................... ii

Summary of the Argument ..................................................................... 1

Argument ................................................................................................ 2

I. The 2024 Rule moots all of Appellants' claims by replacing the complicated legal regime Appellants challenged in their complaint with a comprehensive new rule. ...................................... 2

II. Because Appellants have been prevented from obtaining review of the district court's decision through no fault of their own, this Court should vacate that decision ........................... 7

Conclusion .............................................................................................. 9

Certificate of Compliance ..................................................................... 10

Certificate of Service ............................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Association of American Physicians & Surgeons v. Sebelius*,
    746 F.3d 468 (D.C. Cir. 2014) .......................................................................... 5

*Brereton v. Bountiful City Corp.*,
    434 F.3d 1213 (10th Cir. 2006) ........................................................................ 8

*Coalition for Government Procurement v. Federal Prison Industries, Inc.*,
    365 F.3d 435 (6th Cir. 2004) ........................................................................... 7

*Doe v. University of Michigan*,
    2020 WL 9171175 (6th Cir. Dec. 23, 2020) .................................................... 8

*Fialka-Feldman v. Oakland University Board of Trustees*,
    639 F.3d 711 (6th Cir. 2011) .................................................................. 2, 6, 7

*Franciscan Alliance, Inc. v. Burwell*,
    414 F. Supp. 3d 928 (N.D. Tex. 2019) ............................................................ 3

*Green Party of Tennessee v. Hargett*,
    700 F.3d 816 (6th Cir. 2012) ........................................................................... 2

*Kasap v. Folger Nolan Fleming & Douglas, Inc.*,
    166 F.3d 1243 (D.C. Cir. 1999) ....................................................................... 8

*Kenjoh Outdoor, LLC v. Marchbanks*,
    23 F.4th 686 (6th Cir. 2022) ............................................................................ 2

*Shaw v. Merritt-Chapman & Scott Corp.*,
    554 F.2d 786 (6th Cir. 1977) ........................................................................... 8

*Stewart v. Blackwell*,
    473 F.3d 692 (6th Cir. 2007) ........................................................................... 7

*U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*,
    513 U.S. 18 (1994) ...................................................................................... 7, 8

*United States v. Munsingwear, Inc.*,
    340 U.S. 36 (1950) ................................................................... 7, 8

*Walker v. Azar*,
    2020 WL 6363970 (E.D.N.Y. Oct. 29, 2020) .................................... 3

*Walker v. Azar*,
    480 F. Supp. 3d 417 (E.D.N.Y. 2020) .............................................. 3

*Whitman-Walker Clinic, Inc. v. HHS*,
    485 F. Supp. 3d 1 (D.D.C. 2020) ..................................................... 3

*Wyoming v. United States Department of Interior*,
    674 F.3d 1220 (10th Cir. 2012) ....................................................... 5

**Regulations**

86 Fed. Reg. 27,984 (May 25, 2021) ....................................................... 4

Nondiscrimination in Health and Health Education Programs or
    Activities, Delegation of Authority, 85 Fed. Reg. 37,160 (June
    19, 2020) ....................................................................................... 3

## SUMMARY OF THE ARGUMENT

The new final rule promulgated by the Department of Health and Human Services on May 6, 2024 (89 Fed. Reg. 37,522), has made this case moot. Accordingly, the Court should dismiss this appeal, vacate the decision below, and remand for dismissal without prejudice.

When Appellants American College of Pediatricians (ACPeds) and Catholic Medical Association (CMA) filed their first amended complaint on behalf of their members two-and-a-half years ago, they alleged that a complicated series of two final rules issued under prior administrations interpreting Section 1557 of the Affordable Care Act, court decisions at least partially enjoining those final rules, an executive order signed by President Biden, a public Notice of Enforcement issued by HHS, and a Statement of Interest filed by HHS, all combined to threaten their members with steep financial penalties if they declined to perform gender-transition surgeries, prescribe gender-transition drugs, and speak and write about patients according to gender identity rather than biological sex—even when doing so would violate their medical judgment or religious beliefs. Compl., R.15, PageID 126–27, 134–42.

The new 2024 Rule, which takes effect July 5, 2024, replaces all of that, making it impossible to grant Appellants effectual relief in this case. When a civil case becomes moot pending appellate review, the established practice is to vacate the judgment below and remand with instructions to dismiss. The Court should follow that practice here.

# ARGUMENT

## I. The 2024 Rule moots all of Appellants' claims by replacing the complicated legal regime Appellants challenged in their complaint with a comprehensive new rule.

"Article III of the United States Constitution empowers the federal courts to hear only 'cases or controversies,' U.S. Const. art. III, § 2, cl. 1, a cradle-to-grave requirement that must be met in order to file a claim in federal court and that must be met in order to keep it there." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011). "If events occur during the case, including during the appeal, that make it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed as moot." *Id.* (cleaned up).

One such event that can moot a case pending on appeal is a substantial change to the legal regime under review. That's "because courts apply the law as it exists at the time of the decision." *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 692 (6th Cir. 2022). "And a change in the law tends to eliminate the requisite case-or-controversy." *Id.* (cleaned up). To decide whether a change in the law is substantial enough to moot the case, this Court asks whether the new regime "operates in the same fundamental way" as the old one. *Green Party of Tenn. v. Hargett*, 700 F.3d 816, 823 (6th Cir. 2012) (cleaned up). If the change in the law "substantially changed [the old] scheme," then the affected claims are moot. *Id.*

2

And that is what has happened here. Though merely replacing one regulatory regime with a new, nearly identical regime that operates in fundamentally the same way is typically not enough to moot a challenge to the old regime, the 2024 Rule does more than that. And that's mainly because, as Appellants explained in their complaint, the old regime and the resulting threat of enforcement Appellants' members faced under that regime resulted from a complicated series of events dating back to a rule issued eight years and two presidential administrations ago. Compl., R.15, PageID 134–38.

That 2016 Rule was subsequently permanently enjoined, at least in part. *Id.*, PageID 139 (citing *Franciscan Alliance, Inc. v. Burwell*, 414 F. Supp. 3d 928, 945 (N.D. Tex. 2019)). And then the next administration issued a new rule in 2020 that revised the partially vacated 2016 Rule to remove the gender-identity mandate entirely. *Id.*, PageID 139 (citing Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160 (June 19, 2020) (to amend and be codified at 45 C.F.R. pt. 92)). But before the 2020 Rule's changes to the 2016 Rule could go into effect, two district courts enjoined parts of the 2020 Rule while declaring that some of the 2016 Rule's mandate remained in effect. *Id.*, PageID 139 (citing *Walker v. Azar*, 480 F. Supp. 3d 417 (E.D.N.Y. 2020), *modified by* 2020 WL 6363970 (E.D.N.Y. Oct. 29, 2020); *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1 (D.D.C. 2020)).

3

Finally, upon taking office, President Biden signed an executive order purportedly applying *Bostock* and requiring that Section 1557 and Title IX be interpreted to include gender identity as a protected trait, while also requiring similar interpretations of all other federal civil rights laws and promoting related policies. Compl., R.15, PageID 140. In response, HHS announced that its Office for Civil Rights would "interpret and enforce Section 1557's prohibition on discrimination on the basis of sex to include: (1) Discrimination on the basis of sexual orientation; and (2) discrimination on the basis [of] gender identity." *Id.*, PageID 140–41 (quoting 86 Fed. Reg. 27,984, 27,985 (May 25, 2021)). And when Appellants finally sought preenforcement relief from the credible threat of enforcement that series of events posed to their members, the Government spent the next two years carefully refusing to disavow that it would enforce the resulting mandate against Appellants' members, even conceding in this appeal that "it is *possible*" that it might. Br. for Appellees at 42.

With the issuance of the 2024 Rule, that complicated amalgamation of agency actions, court decisions, and official statements that had combined to create the threat of enforcement Appellants sued to enjoin has been rendered inoperative by a single, comprehensive new rule. And while theoretically the old regime *could* one day spring back into effect if a court were to enjoin the new rule, that speculative possibility is not enough to prevent this case from becoming moot right now. *See*

4

*Ass'n of Am. Physicians & Surgeons v. Sebelius*, 746 F.3d 468, 472–73 (D.C. Cir. 2014) (rejecting the "startling argument" that a claim was not moot because a new rule that seemingly mooted the case might someday be invalidated, forcing the administration to "retreat" back to the agency actions the plaintiffs had originally challenged).

The full impact of the resulting changes remains to be seen—and litigated. But taken together, they are substantial enough to moot all of Appellants' claims challenging the old regime. *See id.* at 472 (holding that a claim attacking an interim rule became moot once it had been "superseded by a rule promulgated after notice and comment" that included "substantive changes").

While Appellants maintain the right to challenge the many deficiencies that remain in the 2024 Rule in a separate lawsuit, "it is clearly preferable as a general matter to review a set of claims in the context of an extant rather than a defunct rule." *Id.* at 473. And Appellants concede that nothing about this case warrants a departure from that general principle.

Moreover, the 2024 Rule moots Appellants' APA claim (Claim 1) for the added reason that "the new rule is *procedurally* distinct" from the 2016 Rule and the 2021 Notice of Enforcement. *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1230 (10th Cir. 2012) ("Because the procedural challenge in this case is to the analysis underlying the 2009 temporary rule and that analysis has been redone, we hold that the

5

procedural challenge to the 2009 temporary rule is moot."). Again, the old regime was a patchwork system created across three presidential administrations. The core rule is now eight years old, it was partially repealed and partially left in place by court order in 2020, and then its enforcement was modified by gap-filling guidance issued three years ago. This presents a stark procedural difference from the 2024 Rule, which, in effect, resets the mishmash regulatory regime Appellants challenged, thus presenting a very distinct procedural circumstance.

Finally, while Appellants included a request for nominal damages under the Religious Freedom Restoration Act in their first amended complaint, Compl., R.15, PageID 208, they have withdrawn that request for compensatory relief by not pursuing it in this appeal.

For these reasons, Appellants concede that their case challenging the previous regime is moot, and if they were to receive relief against the old regime that they challenged in their complaint, that relief would not be sufficient to shield them from injuries now caused by the new 2024 Rule. Appellants are not seeking retrospective relief for any of the harms they suffered under the old regime, and the old regime will no longer pose a credible threat entitling Appellants to prospective relief once the 2024 Rule takes effect. Thus, events have occurred during this appeal "that make it impossible for the court to grant any effectual relief whatever" to Appellants, and the "appeal must be dismissed as moot." *Fialka-Feldman*, 639 F.3d at 713 (cleaned up).

## II. Because Appellants have been prevented from obtaining review of the district court's decision through no fault of their own, this Court should vacate that decision.

"When a case becomes moot on appeal, as this one did, the established practice is to reverse or vacate the judgment below and remand with a direction to dismiss." *Id.* at 716 (cleaned up) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950)).

"The idea is that when a party seeks relief from 'the merits of an adverse ruling, but is frustrated by the vagaries of circumstance' from obtaining an appellate ruling, it makes little sense to compel the losing party to live with the precedential and preclusive effects of the adverse ruling without having had a chance to appeal it." *Id.* (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994)). "Vacatur 'clears the path for future relitigation' by eliminating a judgment the appellant could not oppose on direct review." *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 485 (6th Cir. 2004) (quoting *Munsingwear*, 340 U.S. at 40). "In other words, vacatur is generally appropriate to avoid entrenching a decision rendered unreviewable through no fault of the losing party." *Stewart v. Blackwell*, 473 F.3d 692, 693 (6th Cir. 2007).

All of that applies here.

First, the "principal condition to which" the Supreme Court has looked to decide whether to order *Munsingwear* vacatur "is whether the party seeking relief from the judgment below caused the mootness by

7

voluntary action." *Bancorp*, 513 U.S. at 24. Appellants did not cause the Government to issue the new 2024 Rule that has mooted this case.

Second, "while a dismissal for lack of jurisdiction does not constitute an adjudication upon the merits, it does constitute a binding determination on the jurisdictional question, which is not subject to collateral attack." *Shaw v. Merritt-Chapman & Scott Corp.*, 554 F.2d 786, 789 (6th Cir. 1977). As a result, "under principles of issue preclusion, even a case dismissed *without* prejudice has preclusive effect on the jurisdictional issue litigated." *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999) (citing *Shaw*). And that has led courts to hold that "even a dismissal without prejudice will have a preclusive effect on the standing issue in a future action." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218–19 (10th Cir. 2006). *Munsingwear* vacatur is thus appropriate here to "clear[] the path" for any future litigation if the old regime should someday spring back into effect. *Munsingwear*, 340 U.S. at 40.

Third and finally, "[a]s to the public interest, the district court's judgment, in an unpublished order, has no precedential effect." *Doe v. Univ. of Mich.*, No. 20-1293, 2020 WL 9171175, at *2 (6th Cir. Dec. 23, 2020). So the public interest in precedential decisions remaining in effect does not weigh against vacating the decision below. And "[v]acatur is therefore warranted." *Id.*

8

## CONCLUSION

The Government's issuance of the new 2024 Rule has rendered this case moot through no fault of Appellants. The Court should follow the established practice when civil cases become moot on appeal and vacate the decision below, remanding the case to the district court for dismissal without prejudice.

Dated: May 29, 2024

Respectfully submitted,

*s/Christopher P. Schandevel*
Christopher P. Schandevel
Julie Marie Blake
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
cschandevel@ADFlegal.org
jblake@ADFlegal.org

John J. Bursch
Matthew S. Bowman
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
mbowman@ADFlegal.org

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's May 8, 2024 letter request for supplemental briefing because it does not exceed twenty-five pages.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: May 29, 2024

                                      *s/Christopher P. Schandevel*
                                      Christopher P. Schandevel
                                      *Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>*s/Christopher P. Schandevel*</u>
Christopher P. Schandevel
*Counsel for Appellants*
